Ruffin, Judge,
 

 after stating the Case as above-, proceeded : Upon these facts and the points submitted, several questions of law have been raised, some of which are of real difficulty ; on which able and full arguments have been made at the bar. Others have not been so fully discussed, as the Court, in considering the case, think they merit; and therefore, a further opportunity will be afforded for such additional investigation, as their importance to the parties seems to call for. The Court however, will proceed now to decide most of the questions involved, in order that the future attention of fue Co m" sel and the Court ssiay be confined to as few points a«s possible,
 

 
 *522
 
 Undoubtedly, the pound, during the time this copart» ners'l‘P <l*d business, was computed at 50. Their dealings were at that rate. At the time the state of the concei.n wag fakers, that is, the 10th of April, 1777, the dollar had depreciated to one and a half for one. But if
 
 Kennon
 
 was
 
 debtor
 
 to the Plaintiff before that day, and then ascertained the balance, but did not pay it, he cannot avail himself of the depreciation. If he had then tendered the money, the creditor must have received it, depreciated as it was. And if he had contracted a debt at that day, its value must have been estimated, after the resumption of payment in
 
 specie,
 
 as of the time of contracting the debt. But as these were previous transactions ; if they be regarded as creating a debt from
 
 Ken-non
 
 to the Plaintiff, the depreciation does not affect them, since they have not been paid before the depreciation ceased. It must now be paid in dollars at eight shillings, and not at twelve shillings.
 

 But although such be the rule in relation to
 
 debts,
 
 and must be applied to the present demand, as far as any part of it shall be found
 
 debt,
 
 properly speaking
 
 ;
 
 yet in relation to the firm,
 
 Kennon
 
 did not stand as debtor, but as acting partner and trustee. Immediately after April, 1777, the paper money depreciated rapidly, and continued to do so, until it reached eight hundred for one in 1782. In collecting the debts,
 
 Kennon
 
 did not make himself chargeable with good money for bad. He is only charged with what he received, or with converting what he received. He stands in this respect, precisely as any other agent, whom all of the partners had appointed. Such an agent would have been liable to pay to each partner his share of the effects, actually collected. If they turned out, fay the depreciation, to be of no value, then there would have been a total loss of the copartnership effects; and when the copartners came to settle among themselves, their demands against each other would have been adjusted, on the footing of a tot#l loss. In ascer-
 
 *523
 
 raining the final profit or loss of the business, then, the depreciation of the money must he taken into -account. The profit apparent upon tisc balance account of April 10,
 
 1777,
 
 is not a real, ascertained profit. The business was not then closed. The profits might have been subsequently increased by interest, purchases of land in payment of debts, or other means. They might have been altogether conk in insolvencies of debtors, or destruction of property during the war, or in the depreciation of money, at the time it was received or afterwards. This loss is not to be thrown entirely on the collecting hand. If
 
 Kennon
 
 were now living, he might and would be required to state in what funds the payments were actually made. The parties are at liberty now to prove, if possible, that fact-Come of the debtors may be living. Some of
 
 Kennon’s
 
 receipts may be found, expressing specie payments. Some deeds for land belonging to the firm may be traced, in which the consideration will exhibit the truth. The money actually received is that with which he is chargeable. But in the absence of ail evidence, the history of the times, as well as the scale of depreciation, fixed by law in 1783, must guide us. The hooka show the periods of receiving the money, and its value must be 'determined by that. There is no other mode, at this remote day, of' arriving as nearly at the truth. And the Court feels the less reluctance in relying on
 
 Kennon’s
 
 entries for this purpose, because, on looking into the books, it is obvious, that he meditated no advantage of his absent parí» tiers, but in good faith kept the accounts, and protected their interests, ao far aa he could, or thought himself-justified. Be refrained until 1781 (probably as long as he was allowed) to submit their share to the operation of 'die confiscation acts. He then charges just the .sum paid to their individual account. Be afterwards kept that account open, and continued his cash account, am" made several entries in it. Had he lived, tinques-'fionably this controversy would not have Rrisen — ^sUrast
 
 *524
 
 by bis fault, if we are to judge by the acts of bis life,. The depreciation is therefore proper to be allowed, in ‘
 
 r
 
 ascertaining the value of the partnership effects, which came to
 
 Kennon9s
 
 hands.
 

 The charge of interest would be properly made, if this were a debt, and if it be a debt not affected by confiscation. But at present, it is not material to consider the latter point; because clearly, for the reasons already gi ven,
 
 Kennon
 
 wa? not a debtor, at least to the extent, of the partnership funds left liis hands. It is repeated that he was a trustee. He is therefore chargeable with interest only in two cases : firsts if Sie made it,* secondly, if he was in duty bound to make it, might have made it, and did not. As far as the debts increased by interest before collection, that attached itself to the principal, and became principal in his hands. But if it be apparent, that a trustee did not make interest, and could not; that he was prevented by law from doing so; 'hat the effects were seized out of his hands, he is not upon general principles chargeable with interest. A debtor is obliged
 
 to
 
 pay interest, because it is a part of his stipulation. Whether he makes it or not; whether he has the money in his desk or not; whether he lays it out in funds bearing interest or not; neither charges him, nor discharges him. His contract obliges him. An agent or trustee stands upon a different footing. He is liable
 
 prima facie
 
 for interest made, or for grossly neglecting to make it. If therefore
 
 Kennon
 
 did in fact pay into the treasury funds in his hands
 
 bona fide,
 
 he is not liable for interest,
 
 as a partner,
 
 until the bill filed. He is not chargeable for unfaithfulness, where he was not unfaithful. The Court holds this position, altho’ the treaty of 1783 should operate upon that part of the demand, which is principal money. That treaty may include a trust fund, like that in dispute. Its obvious import respects debts. But 6»r the present, the Court does not mean to determine, whether in its extent, it is broad enough to render one copartner personally liable
 
 *525
 
 to another, for the share of (he latter, seized out of the hands of the former by the sovereign. Be that as it ¡nay, it cannot, have the effect of turning an agent into a debtor, and compelling him to pay interest, nor the obedience the law by a trustee actingdhma fide, into a breach of trust rendering him liable for consequent damage. The opinion of the Court, on this point does not rest on the strength of confiscation acts, as confiscations
 
 ;
 
 whereby
 
 ICennon
 
 is discharged from a demand to which he would he otherwise liable. On the contrary, he was never liable for interest; because he did not contract, as a debtor, to pay it 5 and because, as trustee, he did not make it, and could not make it.
 

 The effect, upon the principal sum itself, of the payment into the treasury, depends upon the construction op the treaty of peace with Great Britain. Whatever doubts were once entertained upon the operation of that; instrument, its construction and obligation have been so long .settled by the Courts of the Union, and acknowledged by the citizens and Courts of North Carolina, in reference to debts, that this Court could not suffer an argument against it. The Counsel for the Defendant have, very ingeniously, put their case upon a new point, as regards the treaty. They argue, that the war of 1812 annulled the treaty 5 that the operation of the confiscation acts was prevented by the treaty alone $ and that upon the expiration of the latter, the former relived. If he treaty were to be regarded in the light of a repealing statute, and the war a repeal of that, the argument would he fair, and the conclusion sound. But the similitude does not exist. The reason why the repeal of are-pealing statute revives the law first .repealed is, that it necessarily denotes the intent, of the Legislature, that such shall be the case. There can be no other motive for the repeal of a repealing statute. That has no application to the case of the law and the treaty under
 
 *526
 
 consideration. If the war had been declared by this State aiotie, such an inference could not be drawn. Much less, when it was the act of another government, jiavjng ao p(,Wer over our State laws. But why suppose, that the confiscation acts of the revolution were intended to be revived by the war, when no new confiscations were enacted. The persons formerly offending had most of them, been long in their graves ; and it is not to be supposed, that the hard measure of seizing private property, iho’ enemies, was intended thus indirectly to be effected. The treaty revived the rights of the Britisii creditors, and gave them as full force/ as if the confiscation acts had never passed. It abrogated those acts altogether, and left those rights as those of other friendly aliens.. Upon the breaking out of a new war, they depended upon the general doctrine respecting debts to alien enemies. They were not forfeited. There was a temporary disability to sue, which ceased with the war. But even that does not appear to be the case here; for
 
 Ebcnecaer McNair
 
 states himself in I ho bill to be
 
 then
 
 of the city of Richmond in "Virginia. Upon the general question, however, the Court is clear, that the confiscation acts, as continuing laws, do not bar the Plaintiff; not because the treaty remaius in force, notwithstanding the late war; but because rights arose under the treaty while it was in force, which nothing that has been since done has destroyed, or was intended to destroy.
 

 What effect this shall have upon the present controversy in all its parts, the.Court will not now conclusively determine. Whether
 
 Kennon
 
 shall stand charged with or excused from the
 
 £607 17
 
 9, stated to be
 
 profit,
 
 or what, ever other sum may, upon taking the accounts, be found to be the profit, the Court reserves to be further considered.. It may be, that as far as the profit goes, or as far as the
 
 McNairs
 
 were interested,
 
 as
 
 partners, in the firm, the confiscation and seizure may he a specific destruction of the trust fund; and that the treaty gives no right
 
 to
 
 
 *527
 
 them to seek reparation from their copartner, it might be, if tho stock of the partners, as well as their profits, bad been equal, that the confiscation might have exonc-rated
 
 JCennon
 
 altogether. Or it may he, as a part of the Plaintiff’» demand is for supplies furnished the store, that
 
 Kcnnon
 
 must himselfindirectly sustain a par! of the burden of the confiscation, by considering the loss of ibo
 
 McNairs
 
 the general loss. It may be material, too, to consider,, that the payment to the public, if made at all, is said te be on account, of the confiscated esf ales of
 
 M
 
 &
 
 E. McNair.,
 
 when the act of 1779 «Mentions
 
 Ralph
 
 alone. That isas office found aa to him ; but even if
 
 libenexe?
 
 ceníes within; the provi-ions of the genera! previous act, a km her office must be shown as to him. And then the effect of that, whether the loss sha!! fail on ail or on each, separately, will remain to be determined. I am now speaking it! referenee to the partnership eGrots being in
 
 Kcn-non’s
 
 hands, as the acting partner aod trastee for the firm. And the Court declines declaring the rights of the parties ; because the points were not discussed at the bar., and perhaps the cause may bo decided yet, without the Counsel considering it worth while to enter into that discussion. Hut all equity on these points is reserved ; and in taking the future accounts, the partir,» are at liberty to have any matter stated, which v/IH raise the questions.
 

 But wit''¡ever may be the rubs regarding
 
 l&nmm
 
 a.-; a trustee of the fuud.it can have uonpulication to a large,, and indeed the most important part of the Plaintiff’s de - mand.
 
 Ralph
 
 &
 
 Ebenezer McNair
 
 were
 
 creditors
 
 of
 
 .Sichard Kemion
 
 &
 
 Co.
 
 in the sum of ,£1701 15 2 ; for one half of which
 
 Richard M‘ennon
 
 was personally their debtor, in the event even of a loss of all the profits, anti of a total loss of the whole capital--from whatever causo such losses might arise. It is true, they could not sue hint at Law ; nor could they in Equity, as for a specific sum, unconnected with ’the other transactions of the
 
 *528
 
 house, because
 
 ICennon
 
 might, in like manner, be a ere* ditorof the concern. But here, the parties have, in fact, so far adjusted the partnership, as to show what the firm (() one partner, and what the other partner owed to the firm. They found the
 
 McNairs
 
 creditors, to the amount before mentioned ; and they found
 
 JCennon
 
 a debtor to the firm in the sum of
 
 £75
 
 9
 
 7.
 
 It remained oniy to qlosc the concern, so that it might appear, whatfinal profit or loss might be made. if a profit,-then the
 
 McNairs
 
 would receive.their whole
 
 debt,
 
 and a share of the profit: if a loss, the
 
 McNairs
 
 would receive such a portion of their debt, as the joint property could
 
 satisfy;
 
 and if the residue, one half must be borne by themselves, and the other half paid to them by their partners. In the most fnherse event, therefore,
 
 ICennon
 
 is a
 
 deMor,
 
 not to the firm, but to
 
 &.
 
 &
 
 E. McNair,
 
 in one half of their advance of ¿fil/Ol 15 4, after deducting therefrom his own debt to the firm of
 
 £73
 
 9
 
 7,
 
 of which last sum he ought to pay to them the whole with interest, deducting that for the war. It may be said, that this money was also in his hands as a part, of the trust fund. It is admitted. But it was a trust for his own benefit, as well as theirs; and if the fund be lost, be remains a debtor
 
 to them
 
 for a share of their advance over and above his. And however the confiscation, but for the treaty, might have protected him,from that (as indeed it would from any other debt) yet the effect of his fiduciary character cannot be carried so far, as to evade the treaty, as respects the debt due from himself. To this extent, he was strictly a debtor. For by the articles, no particular stock is to be provided by either party.
 
 McNair
 
 was to import the goods, and put them to the firm at a very low advance, and
 
 ICennon
 
 was to sell them, being allowed at first a salary for his time out of the profits, and each to share equally in gain or loss. Afterwards his salary was given up, in consideration of the services to himself of the store-keeper paid by the company. The debt to
 
 *529
 

 McNair,
 
 therefore, is for goods, and stands on the same footing with a purchase from another person. To this extent, at «all events,
 
 R'ennon’s
 
 estate is immediately lia-hie to the Plaintiff. It will be to a greater, if, upon taking the accounts, a profit shall still be found, or less than a rota! loss; because
 
 McNair
 
 is entitled to full payment out of the fuud, as far as if goes ; ami when that fails,
 
 to
 
 call upon
 
 Kennon
 
 for half the deficiency,. The Master reports sundry small payments for
 
 McNair.,
 
 which the Court will not now consider, but leave to be adjusted by an accurate account. In the mean time, as
 
 it
 
 is certain that the aggregate of principal and interest thus due must exceed the sum of
 
 $6000,
 
 a decree must be pronounced therefor presently for the Plaintiff and another reference to the Clerk,
 
 to
 
 state the precise sum. due on this part of the case. If the Plaintiff be, satisfied therewith, no further accounts need he taken ; hut if lie should desire it, the Master must take a full account of the partnership, to ascertain what the loss or gain was, and adjust it between the copartners. The Court docs not think it necessary to distinguish in their opinion, the share of
 
 Ealph McNair
 
 from that of
 
 Ebenezer,
 
 in the sum now decreed ; because the whole is for a debt due to the house of
 
 Ralph
 
 &
 
 Ebenexcr
 
 McNair, and the distribution between themselves will be made in the settlement of that house, which is not now before us.
 

 The question of the liability of the Defendant,
 
 England,
 
 is then submitted by the Clerk, and has been elaborately and ably argued at the bar. '¿’hr. Court does not feel it necessary, to enter upon the general doctrine of the liability of one trustee, or executor, for the act of
 
 another;
 
 nor to say, whether that of co-administrators is distinguishable from one or both of them. The facts are but imperfectly reported; and the Court does not choose to lay downarsy general rule upon the effect of joining in an inventory, or joining in a sale or hiring. But the Master ■'TjwtSjtbat in 180$. there were twenty bwoo slaves, of the
 
 *530
 
 value of ggOO each, and the Defendant seeks to exonerate him.self from answering for llieir value, by sajing that they were divided by order of Chatham Comity Court,since filing of the original bill, and while it, was pending, amongst his intestate’s next of kin, and that accounts of the estate were taken upon a petition in that Court, upon which balances were found due, decreed and paid to the next of kin : but lie has laid none of these proceedings before, the Master. These facts furnish the, specific ground upon which the Court hold, that the
 
 Defendant,Ragland,
 
 is chargeable. Delivering over assets to legatees is a
 
 de-vastavit
 
 as to creditors. It. is true, one executor may assent to a legacy, and therefore probably his assent might not charge a co-executor. But one administrator cannot divide the estate, without the assent of the. other. And if administrators are to be placed within the rule of trustees, it is clear that by that rute, if one assents to a disposition of property, wrongful in itself, and not only made that the other trustee might misapply the proceeds, but constituting, in the very act itself, a misapplication, it is,a breach of trust, and renders the- party responsible. ff this division had been made out of Court, th->re could be no doubt of this consequence, ft was a direct concurrence in a
 
 devastavit.
 
 Nor is it less so, when made under decree, unless he shows by the proceedings that, he resisted it. For ought we can know, he assented to it expressly, joined in taking the accounts, received commissions, and participated in making the actual division under the decree. The withholding of the record creates every presumption against him. If he was not a party to it, he had it completely in his power to protect himself and the creditors, by taking the prope; ty into his possession, or suing for it. If he was a party, then he mu«t be taken as assenting, unless he shows the contrary, and that his efforts were real, and to the utmost of his power. It is to he recoil- cted, that all the proceedings were had whilst the present suit was in pro-
 
 *531
 
 gross, .and after tir* Defendants therefore had complete notice of the demand. A creditor must not thus he defeated ; hut each person contributing to the attempt must answer to him. He is not hereby charged beyond value of the specific slaves, thus delivered over. When the Plaintiff shall attempt to carry it further, the Court will act upon the case, as it may then be nude to appear.. At present, it is not necessary to Say down any general rule.
 

 As the .Master has taken no account of the partnership, and has proceeded upon a wrong principle in charging
 
 Kennon
 
 with the whole, effects as money, the whole report is "-et aside, as far as it contains the accounts, except that part which adopts the statement of the balance sheet of April 10th,
 
 1777,
 
 of the
 
 debí
 
 to
 
 11.
 
 & IS.
 
 McNair,
 
 of £1853 5 3, and reduces it, from the admissions isi the bill, to
 
 £1701 IS
 
 2 on the 1st July, 1777, which makes it unnecessary to pas-j particularly ou the exceptions of Ike Defendant. And the case must be again referred, to have the accounts taken upon the principies here laid down, if the Plaintiff chooses to proceed therein. And the. Court reserves all equity, arising out of any payment made by
 
 Kennon,
 
 under, or by colour of the confiscation acts, as far as it respects every part of the Plain-üíf’s demand, except one half of the said debt of £1775 4 9. And also refrains from declaring, whether, in fact, he did, or did not make such payment,
 

 Per Curiam.
 

 — This cause coming on to be heard ors the report of the Clerk, and the exceptions, the Court considers that the account stated by the Clerk is based upon a wrong principle in this ; that the intestate
 
 Ken-non
 
 is charged with the whole interest of
 
 Ralph McNair
 
 and
 
 Kbenexer McNair
 
 in the effects of
 
 Richard Kerman
 
 &
 
 Co.
 
 as cash in said
 
 Kennon*s
 
 hands, and a debt from him jo said
 
 11.
 
 <§* jES.
 
 McNair §
 
 and also inthis, that no au--tcount is stated of the copartnership, and therefore the Court doth set aside flm report &e
 

 
 *532
 
 And doth declare, that it appears by the balance ac~ count of
 
 Richard Kennon
 
 &
 
 Co.
 
 of April 1.0,1777, thatü. and
 
 E. McNair
 
 were then,
 
 creditors
 
 of the firm of
 
 Richard Kennon
 
 &
 
 Co.
 
 in the sum of^l853 5
 
 5}
 
 which was reduced as admitted in the original bill by payment on 1st July, 1777, to the sum of J1701 15 2, at the rate of §2,50 to the pound, and that
 
 Richard Kennon
 
 was
 
 debtor
 
 of said
 
 Richard Kennon
 
 &
 
 Co.
 
 in the sum of
 
 £73
 
 9 7. Declare further said
 
 Richard Kennon
 
 liable, in case of the total loss of the other effects of said firm of
 
 Richard Kennon
 
 Sc
 
 Co.
 
 to pay to his said copartners the amount of his said own debt towards their said debt of ^1701 15 2, and also (after deducting from the said sum of Ü1701 15 2S the said sum of ^73 9 7,) liable to pay to them one half of the residue, namely, the sum of ^814 2 9 with interest on the said two sums of ;®73 9 7, and
 
 £814 2
 
 9, from the 4th day of July, 1782, as his, the said Kennon’s, share of the loss of said
 
 Richard Kennon
 
 &
 
 Co.
 
 if such total loss did in fact happen : and declare further, that the Defendants received assets of their intestate to a larger amount in slaves and other specific chattels^ (which they now hold, or have wasted,) than is sufficient to pay the said sums and interest as aforesaid: And decree, that the Defendants pay to the Plaintiff the sum of 86000, in part of, and towards the said debt, and that execution issue therefor, against their bodies and proper estates ¿ and refer again to the Master
 
 Src.